UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                         Case Number 21-20390

v.                                          Honorable David M. Lawson

JASON KEITH FREEMAN,

        Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION TO WITHDRAW GUILTY PLEA**

Defendant Jason Freemen entered a guilty plea to illegally possessing a firearm as a convicted felon, which he now wants to take back. The main reason for his change of heart is that he received bad advice from his former lawyer, who admittedly made a mistake in his calculation of the likely sentencing guideline range. Freeman also says that his lawyer should have filed a suppression motion, as Freeman asked him to do. However, despite the erroneous advice about the sentencing guideline range, and counsel's decision not to file a motion that he believed lacked merit, Freeman understood his options and made an informed choice to plead guilty with full knowledge of the possible consequences. The Court will deny the motion and reschedule the case for sentencing.

I.

Freeman, a convicted felon, was found in possession of a handgun during a stop-and-frisk encounter with the Detroit police. Although the details of the offense conduct were not explored on the record at the plea hearing, the government's response to this motion offers a narrative of the encounter that led to the defendant's arrest on March 5, 2016, which the defendant does not challenge. The police say that they saw the defendant walking on a public street with a visible "L-

shaped bulge under his clothing on his right hip," which the officers surmised from their experience was the outline of a concealed pistol. When officers got out of their car to approach the defendant, he took flight, clutching at the area of the bulge in an apparent attempt to retain the weapon from falling out of his waistband. He was apprehended after a short chase, and during a body search a gun was found in the right leg of his sweatpants. When the police asked, the defendant then admitted that he did not have a concealed carry permit.

Freeman was represented during the case through the guilty plea hearing by an attorney with the Federal Community Defender Organization. It is undisputed that defense counsel told Freeman that his sentencing guideline calculation likely would yield a range of 37 to 46 months. Defense counsel acknowledges that he made a mistake in that calculation, and that misstep was brought home when the presentence investigation report was distributed. The Probation Department calculated the guideline range to be 92 to 115 months.

It also is undisputed that Freeman asked his attorney to file a motion to suppress the firearm seized by the police during the March 5, 2016 encounter. Defense counsel told Freeman that he did not believe such a motion had any likelihood of succeeding. No suppression motion was filed.

At the guilty plea hearing on September 2, 2021, Freeman admitted that on March 5, 2021 he illegally possessed a Remington 9mm pistol, knowing that he was not allowed to possess any gun because he previously had been convicted of felony crimes in 2002 and 2015. The 2015 conviction was for attempted assault with intent to do great bodily harm, a crime for which Freeman said he received a prison sentence of one to five years.

Also during the hearing, Freemen stated that he was 37 years old, completed a GED, and could read and write in English. The Court explained all of the defendant's trial rights (to a jury trial, to be presumed innocent, the government's burden of proof, to a unanimous verdict, to

confront and cross-examine witnesses, to testify, to remain silent, to have witnesses called on his behalf, and to have counsel represent him at trial), and Freemen stated that he understood and wanted to waive all of those rights. Freeman also confirmed that he had discussed the elements of the charged offense with his lawyer and the evidence disclosed by the government that would be used to prove those elements at trial. He stated that he understood the tradeoffs in pleading guilty versus going to trial, and he stated that he had decided it was in his best interest to enter a guilty plea.

Freeman indicated some "confusion" when asked if anyone had made any promises to him, which his lawyer suggested was precipitated by a discussion between counsel and the defendant about the sentence guideline range. The specific range was not discussed. However, upon further questioning by the Court, Freeman confirmed that he had not received any assurance from anyone that the Court would impose a specific sentence or a non-custodial punishment in exchange for the entry of a guilty plea. Then this discussion ensued:

> THE COURT: Do you understand that the sentencing decision is mine and that I will be presented with information after the Probation Department conducts a presentence investigation and prepares a report?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And as part of that report we will consider the sentencing guideline range and [defense counsel] apparently discussed that with you; right?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And the sentencing guideline range is advisory. I could sentence you within the guideline range or I could sentence you above or below it. Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: All right. As you sit here today, do you understand that there has been no determination as to what your sentence should be?
>
> THE DEFENDANT: Yes, sir.

      THE COURT:       And are you relying on any representations about what the likely sentence would be in your case in making your decision?

      THE DEFENDANT: No, sir.

Plea Hr'g, ECF No. 26, PageID.99-100.

Following that exchange, the Court also explained that the maximum prison term for the conviction was up to 10 years in prison, and the defendant indicated that he understood. *Id.* at PageID.103. At the conclusion of the hearing, the Court accepted the guilty plea and adjudged the defendant guilty of the crime charged in the indictment.

The presentence investigation report discloses that the defendant has a lengthy criminal history including convictions for felony assault with intent to do great bodily harm (2002 and 2015), domestic violence (2011), aggravated stalking and stalking (2012 and 2014), and operating a vehicle while impaired or intoxicated (2015 and 2017). The recitation of criminal history indicates that he pleaded guilty in several of those prior criminal proceedings. Freeman's criminal history category was calculated as Category VI. The government concedes that the defendant never was charged or convicted in federal court prior to this case.

The Probation Officer assigned a base offense level of 26, because Freeman possessed a firearm capable of accepting a large-capacity magazine, and he had two previous convictions for a crime of violence. *See* U.S.S.G. § 2K2.1(a)(1)(B). After deducting three levels for acceptance of responsibility, the net offense level was recommended to be 23. As noted above, that offense level and criminal history category of VI yielded an advisory sentencing guideline range of 92 to 115 months.

Upon discovering his mistake in estimating the sentencing guideline range, defense counsel moved to withdraw. The Court granted the motion and new counsel was appointed, who filed an

appearance on December 28, 2021. About two weeks later, present counsel filed this motion to withdraw the guilty plea.

II.

Freemen argues that he should be allowed to withdraw his plea because his former lawyer grossly underestimated the likely sentencing guideline range, and that lawyer refused to file a motion to suppress the gun, which Freeman now believes would potentially have been meritorious.

After the Court accepts a guilty plea and before sentencing, a defendant may withdraw it where he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). That determination is informed by seven non-exclusive factors: "(1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted." *United States v. Quinlan*, 473 F.3d 273, 276–77 (6th Cir. 2007) (quoting *United States v. Bashara,* 27 F.3d 1174, 1181 (6th Cir.1994)). These factors are considered together; "no one factor is controlling." *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996).

The rationale behind Rule 11(d) is to provide some relief to the defendant to unwind a guilty plea entered "with unsure heart and confused mind." *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991). It should not be used to allow a defendant to gain a tactical advantage over the government. *Ibid.*

Although a few of the relevant factors are neutral here, none of them favor allowing the defendant to withdraw his guilty plea.

### A. Length of Delay

Freeman entered his guilty plea on September 2, 2021 and filed his motion to withdraw it on January 13, 2022. Normally, a four-month delay between entry of the plea and the filing of the motion to withdraw the plea would favor denial of the motion. *United States v. Watkins*, No. 21-1241, 2022 WL 43291, at *2 (6th Cir. Jan. 5, 2022) ("Watkins waited 71 days after entering a guilty plea before reversing course. That substantial delay undercuts his motion. A 75-day delay 'alone,' we have held, strongly supports the denial of a motion to withdraw a guilty plea.") (citing *United States v. Valdez*, 362 F.3d 903, 913 (6th Cir. 2004); *United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996)); *Williams*, 852 F. App'x at 996 ("Williams filed his first motion to withdraw over four months after he pleaded guilty. Our Court has denied motions to withdraw guilty pleas where less time has elapsed between the guilty plea and the motion to withdraw the plea.") (collecting cases). However, during that four months, the presentence report was prepared, which revealed previous defense counsel's error. He then acknowledged that error right away, moved to withdraw as counsel, and sought new counsel for Freeman. New counsel came onboard and promptly ordered the relevant transcripts and then filed the motion to withdraw the plea. This factor does not disfavor the defendant. It plays a neutral role in the analysis.

### B. Reason for Withdrawal

Freeman gives two reasons for changing his mind. The first one, getting bad advice on the sentencing guideline range, deserves some attention. Based on his former lawyer's advice, Freeman had a reasonable expectation that he would be dealing with a guideline range that was significantly lower — almost by half — than what it turned out to be. In pre-*Booker* times, that reliance would have considerably more heft than now, when the guideline range is only advisory

and must be weighed with other factors. *See* 28 U.S.C. § 3553(a). But even then, "the mere fact that an attorney incorrectly estimates the sentence a defendant is likely to receive is not a 'fair and just' reason to allow withdrawal of a plea agreement." *United States v. Stephens*, 906 F.2d 251, 253 (6th Cir. 1990). Now, the Court must calculate the range and use that as a "starting point." *Gall v. United States*, 552 U.S. 38, 49 (2007). But the sentencing court must consider other factors as well and "may not presume that the Guidelines range is reasonable." *Gall*, 552 U.S. at 50.

Here, Freeman was told at the plea hearing that the sentencing guideline range was advisory, and that he could receive a sentence above or below it. And he assured the Court that he was not relying on any representation by anyone on what the likely sentence would be when he made his decision to plead guilty. That assurance significantly undercuts his reliance on his lawyer's bad guidelines estimate as a fair and just reason to change course here. *Watkins*, 2022 WL 43291, at *2 ("The most plausible reason for Watkins' decision to withdraw his plea is that he received the presentencing report and realized his sentence would be longer than he had hoped. Watkins moved to withdraw his guilty plea just 11 days after the probation office released the report. But given the reality that he confirmed at the plea colloquy that he spoke to his attorney about the application of the sentencing guidelines to his case, this factor does little for his cause.").

Freeman's desire to file a motion to suppress evidence is a less compelling reason to allow the plea withdrawal. It is undisputed that he asked his former lawyer to file such a motion, and that counsel did not think much of the merits. Freeman knew all of this when he decided to enter his guilty plea. As discussed in more detail below, the prospects for success on such a motion were dim. And the Sixth Circuit has held "that a defendant's post-plea expression of the desire to pursue a motion to suppress will [not] itself establish a fair and just reason for withdrawal." *United States v. Hughes*, 392 F. App'x 382, 386 (6th Cir. 2010).

C. Assertion of Actual Innocence

Freeman does not assert that he was actually innocent of the crime of possessing a firearm after having been convicted of a felony, so this factor also weighs against granting the motion. *Watkins*, 2022 WL 43291, at *2 ("Watkins has not claimed that he is innocent of the felon-in-possession charge at any point. He admitted to police that he handled the rifle stored in his basement, and he conceded the factual basis for the possession charge in his plea colloquy. Even now, he does not claim innocence."). Freeman contends that his desire to file a suppression motion is "tantamount" to an assertion of innocence, but the Sixth Circuit has rejected the assertion of such false equivalencies between potential legal and evidentiary objections to the proceedings compared to actual claims of factual innocence of a crime. *See Williams*, 852 F. App'x at 996-97. Moreover, during his allocution the defendant admitted facts that conclusively establish his guilt for the charged offense. The Sixth Circuit "often look[s] to a defendant's statements at his plea colloquy in judging the circumstances surrounding a guilty plea," and it has found such circumstances wanting where the record discloses that the defendant "confirmed that sufficient evidence existed to convict him of being a felon in possession if he went to trial, that he had discussed the sentencing guidelines with his attorney, and that he freely and voluntarily chose to plead guilty." *Watkins*, 2022 WL 43291, at *2.

D. Circumstances of the Plea

The circumstances of the plea suggest no good grounds for granting the motion to withdraw. The record establishes that the Court thoroughly reviewed the defendant's rights and issues bearing on his competency to enter a plea, explained all of the consequences of the plea and the potential sentence exposure, and engaged in an extensive colloquy with the defendant inquiring about his understanding of his rights and the evidence that would be presented against him at trial. The defendant positively stated that he understood his rights, wanted to waive them, and had

decided that it was not in his best interest to proceed to trial. There is no suggestion in the record of circumstances of the plea that weigh in favor of allowing it to be withdrawn. *Hughes*, 392 F. App'x at 386 ("The fourth factor — the circumstances underlying the entry of the guilty pleas — is of particular relevance in this case. The record is clear that the district court was careful to ensure that the defendant was capable of making an informed decision, that the defendant understood the consequences of entering the guilty pleas, and that the defendant entered the guilty pleas knowingly and voluntarily."); *Williams*, 852 F. App'x at 997 ("The district court thoroughly discussed Williams' options during the rearraignment hearing. The district court informed Williams of his right to proceed to trial and the consequences of pleading guilty. . . . This factor weighs in favor of the government.").

As discussed above, Freeman's assertion that he was misadvised about the applicable guideline range does not constitute a circumstance of the plea that weighs in favor of granting a motion to withdraw, particularly where the statutory maximum penalty was explained by the Court on the record, and the defendant acknowledged that he understood the maximum penalty, and that his plea was not induced by any representation that a particular sentence would be imposed by the Court. *United States v. Stephens*, 906 F.2d 251, 254 (6th Cir. 1990) ("The fact that the [guideline] range was not determined beforehand, or was estimated incorrectly by his counsel, does not justify withdrawing the plea. Although he may have been unaware of the specific result once the Guideline was applied to him, he was aware of the consequences of entering into the plea agreement.").

The defendant's desire to file a motion to suppress does not present a fair and just reason to allow him to withdraw his plea, because the available information suggests that his legal theory — that police lacked probable cause to arrest him — would be unlikely to gain any traction. The

government proffers that the defendant was stopped when police saw visible indications of a concealed gun on his person — an "L-shaped bulge" in his pocket. The presence of a concealed pistol on the person is sufficient by itself to constitute probable cause to believe a person is committing the crime of illegally carrying a concealed weapon under Michigan law. "The fact that [the defendant] was carrying a firearm presented a formidable reason for the officers to suspect that he was involved in criminal activity because carrying a firearm is presumptively illegal in Michigan." *United States v. Mims*, No. 20-20323, 2021 WL 6049406, at *3 (E.D. Mich. Dec. 21, 2021). That is because "[u]nder Michigan law, a defendant accused of illegally carrying a concealed weapon has the burden of producing evidence that he or she is licensed," and "Michigan law also requires that an individual carrying a firearm keep the CPL on his or her person and produce the CPL when requested to do so by an officer." *Ibid.* (citing Mich. Comp. L. § 28.425f; *People v. Perkins*, 473 Mich. 626, 703 N.W.2d 448 (2005); *People v. Henderson*, 391 Mich. 612, 218 N.W.2d 2 (1974)). "For this reason, courts interpreting Michigan law have found that an officer's observation of a firearm in a vehicle is sufficient evidence of criminality to justify a seizure . . . . The same law applies on the street: '[a] person shall not carry a pistol concealed on or about his or her person, or, whether concealed or otherwise, in a vehicle operated or occupied by the person . . . without a license to carry the pistol.'" *Ibid.* (quoting Mich. Comp. L. § 750.227(2)). The same observation of a concealed weapon certainly was sufficient also to constitute reasonable suspicion to stop and frisk the defendant, particularly coupled with his flight at the sight of the police.

Freeman decided to plead guilty with full knowledge of his attorney's opinion that a suppression motion likely would not succeed. He cannot revisit that decision now, after deciding to plead guilty, merely because has a new lawyer.

E. Defendant's Background

Freeman's age, education, and other indications of his background suggest no fair and just reason to allow withdrawal of his plea. When he pleaded guilty Freeman was 37 years old, fluent in English, and had completed the equivalent of a high school education. Nothing in his background suggests credible concern about the integrity of the plea proceeding. *Watkins*, 2022 WL 43291, at *2 ("At the time of his plea, Watkins was a 39-year-old man who had completed his GED. Nothing about his nature or background would prevent him from understanding his plea. Individuals with the equivalent of a high school education do not raise red flags with respect to this consideration.") (citing *United States v. Martin*, 668 F.3d 787, 796 (6th Cir. 2012); *United States v. Matthews*, 745 F. App'x 622, 623 (6th Cir. 2018)).

F. Experience with the Criminal Justice System

Freeman's experience with the criminal justice system is extensive, and his criminal history records several prior felony convictions, some by entry of guilty pleas. There is no indication that he was naïve to the consequences of pleading guilty to serious crimes. *Watkins*, 2022 WL 43291, at *2 ("Watkins had extensive experience with the criminal justice system, having been convicted of multiple crimes in the past. He had previously pleaded guilty to state narcotics manufacture-or-delivery charges involving multi-year sentences, making him well-acquainted with the tradeoffs in a guilty plea."). The fact that his prior convictions were in state court and he never had been convicted of a federal crime is of no consequence in light of his extensive criminal record in the state forums. *See Williams*, 852 F. App'x at 997 ("[W]e find that it is of no consequence that Williams had not been previously charged specifically with violating 21 U.S.C. § 846 because he had a significant amount of experience with the criminal justice system. This factor strongly weighs in favor of the government.").

### G. Prejudice to the Government

There would be no prejudice to the government if Freeman withdrew his guilty plea. But the Court "need not examine whether withdrawal would prejudice the government" in this instance, because "[t]he prosecution does not need to demonstrate prejudice if the defendant, as just shown, has not established a fair and just reason for withdrawing his plea based on the first six factors." *Watkins*, 2022 WL 43291, at *2 (citing *United States v. Spencer*, 836 F.2d 236, 240 (6th Cir. 1987)).

### III.

None of the factors favors Freeman, and several weigh against allowing him to withdraw his guilty plea at this stage of the case,

Accordingly, it is **ORDERED** that the defendant's motion to withdraw his guilty plea (ECF No. 30) is **DENIED**.

It is further **ORDERED** that the parties shall appear for sentencing on **May 11, 2022** at **3:00 o'clock in the afternoon.**

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  April 21, 2022